## WILLIAM SHATTUCK vs. WATSON FREEMAN.

When property is assigned, conformably to the *St.* of 1836, *c.* 238, a creditor of the assignor cannot treat the assignment as void, and attach the property, on the ground that no creditor executed the assignment within a reasonable time, and before the attachment; nor because the property remains in the assignor's hands as agent of the assignee, and is neglected or mismanaged. The remedy of creditors, in such case, is against the assignee, under the provisions of § 7 of that statute.

TRESPASS *de bonis asportatis*. It appeared at the trial before *Putnam*, J. that David Carver Junior, on the 29th of July, 1837, made an assignment of his property to the plaintiff, conformably to the statute of 1836, *c.* 238; and that so much of the property, mentioned in the schedule annexed to the assignment as being in a store in Court Street, in Boston, was delivered to the plaintiff. The defendant, a deputy sheriff, on the 23d of January, 1838, attached the goods described in the writ, at the suit of John G. Wyman against the said Carver, and afterwards, on the petition of said Wyman, caused them to be appraised and sold at auction. At the time of the attachment, the goods were in the hands of Carver as agent of the plaintiff. Immediately after the attachment was made, the plaintiff gave notice to the defendant that the goods were covered by the assignment, and requested him to give them up.

No one of Carver's creditors became party to the assignment, (though they all had notice that it was made,) until after the attachment; but they had held a meeting under the assignment before the attachment.

When the assignment was made, Carver occupied said Wyman's shop, No. 8 Court Street, at a yearly rent of $650, payable quarterly, and taxes. On the 1st of January, 1838, he removed to another shop, of which the yearly rent was $400. At the time of his removal, one quarter's rent and the taxes were due to Wyman; the plaintiff having paid him the rent up to the 1st of October, 1837.

Carver was in possession of the assigned property, as agent of the plaintiff, from the time of the assignment to the time of the attachment, and sold articles from the stock, and paid over to the

Shattuck *v.* Freeman.

plaintiff all the money that he received from sales thereof, except the weekly sum of $9·50, which was the expense of his own board and that of a man and a boy, and which was paid from the proceeds of the assigned property. Several of his creditors, however, had been paid by him in full, by goods taken from the assigned stock, and they had given him up his notes, &c. To several other creditors he had also delivered goods out of the same stock, and charged them as sales.

Between the day of the assignment and that of the attachment, no step was taken towards the making of a dividend; but Carver and the plaintiff were about making an agreement to sell the remaining goods to an individual, with the knowledge and at the desire of some of the creditors.

On this evidence, the defendant requested the judge to instruct the jury that the plaintiff was not entitled to recover; but the jury were instructed, that the plaintiff was entitled to a verdict, and that they should award such damages as would put him in as good a condition as he was when the attachment was made. A verdict was returned for the plaintiff, which is to be set aside, and a new trial to be granted, if the jury were misdirected.

*E. G. Austin*, for the defendant.

All points as to assignments, not provided for by the statute of 1836, *c.* 238, are to be decided by the common law. By that law, property is not secured from attachment if the creditors refuse or neglect to become parties to the assignment. *Widgery* v. *Haskell*, 5 Mass. 144. *Halsey* v. *Fairbanks*, 4 Mason, 206. *Harris* v. *Sumner*, 2 Pick. 129.

The fifth section of the statute of 1836, which directs that notice shall be given to the creditors, as soon as may be, shows that they should come in within a reasonable time; which was not done in this case.

The conduct of the assignor and assignee was fraudulent. The spirit of the statute, as well as its letter, is to be obeyed; and the spirit of it is that a *pro rata* distribution shall be made to all the creditors. Some of them, however, were paid in full.

It may be said, that the plaintiff should have applied to this court to remove the assignee. But the statute is not compulsory; and no creditor, who has not executed the assignment, can take this course. The defendant was not bound to become party to a fraudulent assignment, in order to take the statute remedy. And if the property is all wasted, or paid to part of the creditors, nothing could be gained by applying to the court.

If the assignment were originally valid, it became void by the assignor's continued possession.

*Dexter* and *G. W. Phillips*, for the plaintiff.

The statute of 1836 was made to enable a debtor to assign effectually for the benefit of all his creditors. After he has assigned, he is not answerable for any future proceedings.

It is not necessary that the assigned property should be delivered. *Driscoll* v. *Fiske*, 21 Pick. 503.

The creditors may become parties to the assignment at any time before a final dividend is declared; and there are good reasons for their not becoming parties before there are some steps towards the making of a dividend. A debtor might be discharged without paying any thing, if the creditors were obliged to execute the assignment sooner.

The case does not show any delegation of trust. The assignor was the most proper person to sell the goods. *Vredenbergh* v. *White*, 1 Johns. Cas. 156.

There was no abandonment of the trust by delay. Any creditor might have quickened the assignee's proceedings, by applying to this court, as authorized by the seventh section of the statute. The assignee was a trustee, and could not abandon, as against the creditors. The creditors had not abandoned the assignment; they had held a meeting under it, before the attachment, and all of them, except the plaintiff, became parties to it after the assignment. The plaintiff had received one quarter's rent of the defendant as assignee; and other creditors were urging a sale of the property.

Payment of certain debts in full was irregular, but not fraudulent. And if it were fraudulent, it did not avoid the assignment, as to other creditors under it. *Prince* v. *Shepard*, 9

Pick. 185. See also *Smith* v. *Mills*, Moore, 594. *Hussey* v. *Fidell*, 3 Salk. 59. *Dyson* v. *Glover*, 3 Salk. 60. 1 Story on Eq. §§ 422, 423.

DEWEY, J. Several objections have been taken to the validity of the title of the plaintiff to the property in controversy.

1. It is said that no creditor had become a party to the assignment, before the attachment, by expressing formally his assent to it, and therefore nothing passed by the conveyance to the plaintiff, as against creditors. It is attempted to maintain this position, by reference to the decisions of this court in cases of voluntary assignments made at common law, and before the statute of 1836, c. 238. Such undoubtedly was the rule of law as held in those cases, and such an assignment, until one or more of the creditors of the assignor had assented to the assignment, was invalid as respects attaching creditors. But one of the evils intended to be provided against by the enactment of the statute just referred to, was that of intervening attachments between the time of the execution of the assignment by the debtor, and the acceptance of the same by his creditors. In cases where the amount of property transferred was large, and the creditors numerous, it was usually found impossible to carry into full effect the provisions of the assignment ; as the property was liable to a direct attachment in favor of any creditor, before any other creditor had assented to the assignment, and by the trustee process, after such assent ; which latter process gave an attaching creditor a lien upon all the surplus remaining after discharging the debts of those creditors who had previously assented to the assignment.

The first section of the statute under consideration authorizes the debtor to assign his property to his creditors, or to an assignee, for the use of his creditors, and provides that such assignment shall be valid and effectual against any attachment thereafter made. It will be perceived, that this section contains no provision making the assent of any creditor a prerequisite to the vesting of the property in the assignee and the placing of it beyond liability to future attachments ; and it was doubtless so framed for the purpose of avoiding the evils before alluded to, and

thus the more effectually to secure an equal division of the property of the insolvent debtor among all his creditors. The fourth section is also in accordance with the view we have taken, as to the necessity of any express assent on the part of the creditors to give effect to the assignment, and provides that any creditors may become parties to the assignment, provided they shall apply before the final dividend is declared, subject only to the restriction, that they are not allowed to disturb any dividends already declared. This assignment was therefore proper, in point of form, and assented to and executed by all the parties requisite to give it legal effect, and must therefore be held valid, unless the other objections taken to the transfer are found sufficient to defeat it.

If there had been evidence tending to show that this assignment was entirely fraudulent in its original inception, and such circumstances had been disclosed as indicated the whole transaction a corrupt design to place property beyond the reach of the creditors, and to secure the same for the use of the debtor, it might have been proper to submit the question of fraud to the jury; but on the facts as presented here, we perceive no such ground of defence.

2. The further question, then, is as to the effect of the evidence offered to defeat this assignment, on the ground of a subsequent abandonment or surrender of the rights acquired under it. One ground here taken is, that the actual possession of the property, from the day of the transfer to the time of the attachment, has been in the debtor acting as the agent of the assignee, and in that capacity disposing of the property. We do not perceive any legal objection to the retaining of the services of the debtor, as the agent of the assignee, at a reasonable compensation, in closing the concerns of the debtor, where such assistance is needful, and he is a competent person to render this service. He is, however, to be treated with as any other servant or agent of the assignee, and for all his acts prejudicial to the interest of the creditors the assignee would be liable to the same extent, and in the same manner, as he would for the acts of any other person acting for him in such capacity. If there-

fore, as appeared in this case, Carver, the debtor, had applied part of the proceeds of the goods assigned to the payment in full of the demands of particular creditors, to the prejudice of the remaining creditors, it will be at the risk and loss of the assignee, if the remaining estate is not sufficient to pay the proper proportionate share of the other creditors.

More reliance is probably placed by the defendant upon the evidence of neglect on the part of the assignee, to take immediate measures to convert the assigned property into available cash funds, and the omission to make any dividend among creditors. These circumstances, taken in connexion with the delay of the creditors to express their assent to become parties to the assignment, it is urged, show such a virtual abandonment of all rights acquired by the plaintiff under the assignment, as to justify any individual creditor in treating it as a nullity, and would authorize an attachment of the property as still in Carver, the debtor.

Assuming, for the purpose of properly raising this question, that the case discloses culpable negligence on the part of the assignee, and unnecessary delay in converting the property into money, and in declaring any dividends in favor of creditors, the court are of opinion, that such a state of facts would not justify the attachment by one of the creditors, for the purpose of acquiring a lien upon it in his own favor to the exclusion of other creditors, in the manner here attempted.

The remedy for such neglect or misfeasance on the part of the assignee is fully provided by the seventh section of the act under consideration, and is so regulated as to protect the rights of individual creditors, without defeating the great object of the statute, the equal distribution of the effects among all the creditors. Full power is given to this court, and also to the court of common pleas, upon the application of any creditor, to order and decree such proceedings as will secure a prompt settlement and distribution of the avails of the assigned property, and each of these courts is authorized from time to time, on such application, to make all such orders and decrees touching the matter, as the proper administration of said trust shall require :

and this is the only remedy in such cases, for any creditor who feels aggrieved by the misfeasance or neglect of the assignee. The defendant having wholly failed to justify the taking of the property under the attachment, a verdict was properly taken in favor of the plaintiff.

*Judgment on the verdict.*